1

2

**FILED**

3

JAN 1 8 2002

4

5

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

6

BY_____
DEPUTY CLERK

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

BRENDA PICKERN,

12                                        NO. CIV. S-00-1637 WBS/DAD
            Plaintiff,

13

14          v.                           MEMORANDUM AND ORDER

BEST WESTERN TIMBER COVE LODGE
15   MARINA RESORT, et al.,

16          Defendants.

17                         ----oo0oo----

18          Plaintiff brings this action alleging violations of

19   Title III of the Americans With Disabilities Act ("ADA"), 42

20   U.S.C. § 12101 et seq., and various California statutes.

21   Defendants now move for summary judgment on all of plaintiff's

22   claims.

23   I.   Background

24          Plaintiff is a person with disabilities who requires a

25   wheelchair for mobility.  (Pickern Decl. ¶ 1.)  Defendants

26   allegedly own and operate the Best Western Timber Cove Lodge in

27   Lake Tahoe ("Timber Cove"), a 262 room hotel which was

28   constructed in 1973.  (Maloff Decl. ¶¶ 1,2; Steneberg Dec. ¶¶

1

52

17,18, 20-22, Ex. O, P, R, S, T; Maloff Depo. at 8; Karadanis Depo. at 8-9; Def's Reply at 11.)   In 1997, plaintiff visited Timber Cove, where she allegedly encountered a number of barriers that made it difficult or impossible for her to use facilities such as the pool, laundry room, restaurant, ice machine, and restrooms.   (Pickern Decl. ¶ 4; Pickern Depo. at 30-32, 38, 40, 51-52, 54, 55.)   In August of 1999, plaintiff returned to Timber Cove and allegedly encountered many of the same barriers to access.   (Pickern Decl. ¶ 5.)   Plaintiff sued defendants in July of 2000, seeking injunctive relief under the ADA, and damages under the California Disabled Persons Act, Cal. Civ. Code § 54 et seq., the Unruh Civil Rights Act, Cal. Civ. Code § 51, et seq., and California Health & Safety Code § 19955, et seq.

Meanwhile, defendants entered into a settlement agreement with two other disabled individuals who had sued under the ADA alleging that there were barriers to access at Timber Cove.   Pursuant to the settlement agreement, defendants made improvements to Timber Cove in an attempt to bring it into compliance with federal access codes.   (Maloff Decl. ¶ 3, Ex. A.) Defendants also attempted to correct the problems that plaintiff had identified.   (Maloff Decl. ¶¶ 5, 6, 8-10, 12.)   Plaintiff alleges that despite the extensive improvements defendants have made to Timber Cove, rooms 315 and 318 at the lodge still do not comply with ADA requirements.   (Francovich Decl. ¶¶2,3; Sarantschin Decl. ¶ 6, Ex. A.)

Defendants now bring this motion for summary judgment, arguing that (1) plaintiff's ADA claims are moot; (2) plaintiff lacks standing; (3) plaintiff's claims are time-barred; (4) the

2

1 │ individual defendants should be dismissed; (5) the court should
2 │ decline jurisdiction over the state claims; and (6) plaintiff
3 │ cannot prove she is entitled to relief under state law.   The
4 │ court finds that all of plaintiff's claims survive this motion
5 │ for summary judgment except for her third claim for relief under
6 │ California Health and Safety Code § 19955.

7 │ II.   Discussion

8 │          The court must grant summary judgment to a moving party
9 │ "if the pleadings, depositions, answers to interrogatories, and
10 │ admissions on file, together with the affidavits, if any, show
11 │ that there is no genuine issue as to any material fact and that
12 │ the moving party is entitled to judgment as a matter of law."
13 │ Fed. R. Civ. P. 56(c).   The party adverse to a motion for summary
14 │ judgment may not simply deny generally the pleadings of the
15 │ movant; the adverse party must designate "specific facts showing
16 │ that there is a genuine issue for trial."   Fed. R. Civ. P. 56(e);
17 │ see Celotex Corp. v. Catrett, 477 U.S. 317 (1986).   Simply put,
18 │ "a summary judgment motion cannot be defeated by relying solely
19 │ on conclusory allegations unsupported by factual data."   Taylor
20 │ v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).   The non-moving
21 │ party must show more than a mere "metaphysical doubt" as to the
22 │ material facts.   Matsushita Elec. Indus. Co. v. Zenith Radio, 475
23 │ U.S. 574, 587 (1986).

24 │      A.   Mootness

25 │          A claim for injunctive relief is moot if "it is
26 │ absolutely clear that the allegedly wrongful behavior could not
27 │ reasonably be expected to occur."   Friends of the Earth, Inc. v.
28 │ Laidlaw Enviornmental Services, 528 U.S. 167, 190 (2000).

1  Defendants bear the "formidable burden" of showing that
2  plaintiff's claim is moot.  Id.  Defendants contend that they
3  have cured all of the problems plaintiff identified with Timber
4  Cove and therefore plaintiff cannot be re-injured should she
5  visit Timber Cove in the future.  However, plaintiff has raised a
6  material issue of fact as to whether the improvements fully
7  comply with the ADA, and therefore her claim is not moot.

8         The ADA prohibits public accommodations from
9  discriminating against disabled individuals.  42 U.S.C. §
10 12182(a).  Failure of newly constructed or altered buildings to
11 abide by the construction guidelines set forth in the Americans
12 with Disabilities Act Accessibility Guidelines for Buildings and
13 Facilities ("ADAAG"), 28 C.F.R. § 36 et seq., violates the ADA.
14 42 U.S.C. § 12183(a)(1).  Less rigorous standards are imposed on
15 facilities such as Timber Cove which were constructed before the
16 ADA's enactment in 1990.  These "existing facilities" are
17 required to remove architectural barriers that deny access to
18 persons with disabilities, "where such removal is readily
19 achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).

20        Although the ADAAG sets out the construction
21 requirements for new and altered facilities, it also provides
22 "valuable guidance for determining when existing facilities
23 contain architectural barriers" that must be removed where
24 readily achievable.  Access Now v. South Florida Stadium Corp.,
25 161 F. Supp. 2d 1357, 1368 (S.D. Fla. 2001)(quoting Pasuitti v.
26 New York Yankees, 87 F. Supp. 2d. 221, 226 (S.D. N.Y. 1999.)  In
27 fact, the implementing regulations promulgated by the Department
28 of Justice treat any element in an existing facility that does

1  not meet or exceed the ADAAG standards as a barrier to access.
2  Parr v. L & L Drive-Inn Restaurant, 96 F. Supp. 2d 1065, 1086 (D.
3  Haw. 2000); see 28 C.F.R. §§ 36.304(d), 36.402(b)(2)("measures
4  taken to comply with the barrier removal requirements . . . shall
5  comply with the applicable requirements for alterations," which
6  are set forth in the ADAAG); U.S. Department of Justice,
7  Supplemental Commentary to the Final Regulations, 56 Fed. Reg.
8  34, 544 (1991)("Section 36.304(d) requires that measures taken to
9  remove barriers under § 36.304 be subject to [the] requirements
10 for alterations. . . . It only permits deviations from [those]
11 requirements when compliance with [them] is not readily
12 achievable . . . .")

13        The ADAAG requires facilities with between 201 and 300
14 rooms to provide seven (7) accessible rooms, and an additional
15 three (3) rooms equipped with roll-in showers. 28 C.F.R.
16 §36.402, Appendix A at 9.1.2. The accessible rooms must have
17 bathrooms with "a clear space of 60 inches diameter or a T-shaped
18 space" 60 inches across the top of the T, and 60 inches from the
19 bottom of the T to the top. Id. at 4.2.3, 4.23.3.

20        Timber Cove has 262 rooms and is therefore subject to
21 the above requirements. According to plaintiff's expert witness,
22 two of the seven rooms that defendants represent as being ADA
23 compliant - rooms 315 and 318 - do not have enough floor space in
24 the bathroom to meet the ADAAG's dimensional requirements for
25 unobstructed turning space.[1]  (Sarantschin Decl. ¶ 6, Ex. B.)

26

27        [1]    Defendants object that the testimony of plaintiff's
28 expert lacks foundation.  Plaintiff's expert based his opinions
   on measurements submitted to him by Thomas Frankovich, who

5

1 Defendants' expert does not disagree with this assessment.

2 According to his calculations, the floor space in these bathrooms

3 is "off by an inch or two." (Gattis Decl. ¶ 3.)  In fact, the

4 bathrooms of rooms 315 and 318 come approximately 60 square

5 inches short of the ADAAG requirements, and fit neither the

6 circular nor the T-shaped spacial requirements.

7 Defendants argue that they are nevertheless entitled to

8 summary judgment because a disabled individual, John

9 Baudendistel, was able to maneuver his wheelchair with ease in

10 these bathrooms.  (Baudendistel Decl. ¶¶ 4-7.)  While

11 Baudendistel's testimony is probative on the question of whether

12 Rooms 315 and 318 are fully accessible, it is by no means

13 conclusive on this point, especially given the fact that the

14 bathrooms deviate from the ADAAG requirements.  Whether barriers

15 to access continue to exist at Timber Cove is ultimately a

16 question of fact to be decided at trial.  Because a reasonable

17 juror could find that there are still architectural barriers at

18 Timber Cove, it is not "absolutely clear that the allegedly

19 wrongful behavior could not reasonably be expected to occur."

20 Friends of the Earth, 528 U.S. at 190.

21 Genuine issues of fact also exist as to whether the

22 removal of these architectural barriers would be readily

23 achievable.  The ADA defines "readily achievable" as "easily

24

25 attests to having personal knowledge of the dimensions of Room
26 315 and 318.  (Sarantschin Decl. ¶ 5; Frankovich Decl. ¶ 2.)
    Accordingly, his testimony meets the requirements of Federal Rule
27 of Evidence 703, which permits an expert to base his testimony of
    facts or data "made known to the expert at or before the
28 hearing."  Fed. R. Evid. 703.  Defendants' objection is
    overruled.

6

accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Factors to be considered in making this determination include: (1) the nature and cost of the action; (2) the overall financial resources of Timber Cove and defendants; (3) the type of operations of defendants, including the composition, structure, and functions of the workforce, and the administrative or fiscal relationship between Timber Cove and defendants. 42 U.S.C. § 12181(9).

Plaintiff's expert proposes that the requisite floor space in the bathrooms of rooms 315 and 318 can be achieved by removing the existing bathtubs and replacing them with prefabricated roll-in showers. (Sarantschin Decl. ¶ 6, Ex. A.) This would require removal and reinstallation of bathroom tile and fixtures, the placement of a waterproof floor pan, and perhaps the relocation of plumbing pipes. Further, in addition to purchasing roll-in showers at a cost of approximately two thousand dollars a piece, defendants would be required to discard the existing bathtubs, which cost $1,736 each. (Steneberg Decl. ¶¶ 15, 16.)

Although these improvements would be costly, whether defendants can shoulder these costs is a question of fact for the jury. Plaintiff's evidence shows that defendants recently installed roll-in showers in five guest rooms at Timber Cove, and were able to afford spending $1,736 to install the existing bathtubs in Rooms 315 and 316. (Francovich Decl. ¶¶ 1, 2; Steneberg Decl. ¶ 15.) From this evidence, a reasonable trier of fact could infer that installing roll-in showers in rooms 315 and 318 is readily achievable.

7

1    Defendants submit that a building official who reviewed
2 the plans for modifying rooms 315 and 318 stated that "it would
3 have created an unreasonable hardship on the property owner to
4 redesign the existing structure to fully comply with the
5 accessibility requirements of the [California Building] code."
6 (Maloff Decl. Ex. Q.)  However, the building official's opinion
7 does not resolve the issue.  First, he was interpreting the
8 California building code, not the ADAAG;[2] second, he merely
9 "assumed" that full compliance would be unduly burdensome without
10 actually investigating the issue.  Because material issues of
11 fact exist as to (1) whether architectural barriers at Timber
12 Cove still exist, and (2) whether the removal of those
13 architectural barriers would be "readily achievable" if the court
14 were to issue an injunction, plaintiff's request for injunctive
15 relief is not moot.

16    B.  Standing

17    Article III limits the jurisdiction of the federal
18 courts to "cases" and "controversies."  Accordingly, the Supreme
19 Court has developed a three-prong test to determine whether the
20 plaintiff has standing to sue pursuant to this constitutional
21 requirement.  The plaintiff must show (1) actual or threatened

23    [2]    The portions of the California building codes that
24 defendants' expert examined are identical to the ADAAG.  Compare
28 C.F.R § 36.402, Appendix A at 4.16, 4.20 with 24 C.C.R. §§
25 1115B.7.1.2, 1115B.6.1.1.  However, defendants' expert appears to
have considered only the clear floor space requirements for
26 bathtubs and toilets.  He makes no mention of the requirement for
unobstructed turning space, which is set forth in section 4.23.3
27 and 4.2.3 of the ADAAG.  The ADAAG requires a structure to comply
with the floor space requirements for toilets and bathtubs as
28 well as the requirement for unobstructed turning space in
bathrooms.

8

1  injury (2) that is caused or threatened to be caused by
2  defendants' illegal conduct and (3) that is redressable by the
3  relief sought.  Lujan v. Defenders of Wildlife, 504 U.S. 555,
4  560-61 (1992).  Where a plaintiff seeks injunctive relief, she
5  must also show a real and immediate threat of future injury.
6  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Nelson v.
7  King County, 895 F.2d 1248 (9th Cir. 1990)(requiring a "very
8  significant possibility" that future harm will ensue).

9        Defendants first argue that plaintiff has no standing
10 because she never visited rooms 315 and 318.  However, even the
11 case law cited by defendants expressly rejects this argument.
12 See Steger v. Franco, 228 F. 3d 889 (8th Cir. 2000).  In Steger,
13 the Eighth Circuit held that a disabled plaintiff "need not
14 encounter all [existing] barriers to obtain effective relief," so
15 long as the plaintiff encountered some barrier to access when
16 visiting the facility.  Id. at 894.  The plaintiff had standing
17 even though the particular barrier he encountered had been
18 remedied.  Id.; see also Independent Living Resources v. Oregon
19 Arena Corp., 982 F. Supp. 698, 762 (D. Or. 1997)(ordering
20 injunctive relief for entire arena although "it is unlikely that
21 any individual plaintiff will ever sit in each of the seats . .
22 ., or use each of the restrooms, or attempt to reach each of the
23 ketchup dispensers").  The Sixth Circuit noted:

24              To hold otherwise would be piecemeal compliance.  To
25              compel a building's ADA compliance, numerous [disabled]
26              plaintiffs, each injured by a different barrier, would
27              have to seek injunctive relief as to the particular
28              barrier encountered until all barriers had been

9

1                    removed.  This not only would be inefficient, but
2               impractical. Id.

3   This case is indistinguishable from Steger.  Like the plaintiff
4   in Steger, plaintiff seeks relief from barriers to access that
5   she did not personally encounter; like the plaintiff in Steger,
6   she has standing to do so.

7               Defendants next argue that plaintiff cannot show re-
8   injury is sufficiently likely to occur.  However, plaintiff
9   states in her declaration that she frequently visits the Lake
10  Tahoe area and would like to stay at Timber Cove the next time
11  she returns. (Pickern Decl. ¶¶ 6.)  In the likely event that
12  plaintiff returns to Timber Cove, a "credible threat" of future
13  injury exists, given that two of the seven disabled access rooms
14  are not fully compliant.  Plaintiff may encounter a situation in
15  which the only disabled access rooms available are rooms 315 or
16  318, especially if plaintiff visits during the tourist season.
17  There is no guarantee that the other five disabled access rooms
18  will be available, even if plaintiff attempts to make a
19  reservation in advance.  Accordingly, plaintiff has standing to
20  seek injunctive relief.

21          C.   Statute of Limitations and Laches

22              The statute of limitations for bringing a claim under
23  the ADA, the California Disabled Persons Act, or the Unruh Act is
24  one year.  Wilson v. Garcia, 471 U.S. 261, 266-67 (1985); West
25  Shield Investigations v. Superior Court, 82 Cal. App. 4th 935
26  (2000); Cal Code Civ. Proc § 340(3).  Plaintiff filed this action
27  on July 31, 2000, which is within a year of the alleged
28  discrimination that took place during plaintiff's August 1999

                              10

1 visit to Timber Cove.

2       Defendants contend that the statute of limitations
3 began to run in 1997, when plaintiff first visited the lodge and
4 encountered barriers to access.  However, plaintiff does not
5 bring this claim on the basis of the injuries she allegedly
6 suffered in 1997.  The claim is based entirely on the 1999 visit.
7 (See Pl's Compl. ¶ 39.)  The fact that plaintiff was allegedly
8 injured in 1997 is irrelevant to the statute of limitations.[3]

9       In their reply brief, defendants argue for the first
10 time that under the "discovery rule," plaintiff's cause of action
11 accrued in 1997 when she first became aware that Timber Cove did
12 not comply with the ADA.  The "discovery rule," applied in
13 property disputes, states that the statue of limitations begins
14 to run at the time the plaintiff discovered or should have
15 discovered the condition of the property that forms the basis for
16 the lawsuit.  Greenberb v. Du Bain Realty Corporation, 27 Cal.
17 App. 2d 111 (1983); Catherine Holthouse Mangini b. Aerojet-
18 General Corp. 230 Cal. App. 3d (1991)(applying discovery rule in
19 an action between property owners and lessees for hazardous waste
20 contamination); Haley v. Santa Fe Land Improvement Co., 5 Cal.
21 App. 2d 415 (1935)(applying discovery rule in claim alleging
22 fraud regarding the condition of real property).  Claims under
23 the ADA and the Unruh Act, are properly characterized as personal

24

25      [3] Defendants rely on a backwards interpretation of the
26 continuing violations doctrine, which in some circumstances
permits a plaintiff to rely on acts of discrimination occurring
27 outside the statutory period to prove an ongoing violation of her
rights.  Defendants flip the analysis, arguing that plaintiff
28 cannot rely the violations occurring in 1999 to prove a claim
that accrued in 1997.

1  injury actions, not property disputes.  Wilson, 471 U.S. at 280.
2  A personal injury action accrues when the wrongful act (in this
3  case the denial of access in 1999) takes place.  Teresmer v.
4  Barke 86 Cal. App. 3d 656 (1978).  Defendants cite no cases, and
5  the court is aware of none, that apply the "discovery rule" to
6  ADA actions.  Therefore, plaintiff's claim is timely.

7  Next, defendants argue that the equitable doctrine of
8  laches bars plaintiff's claim.  To establish laches, defendants
9  must prove both an unreasonable delay by plaintiff and prejudice
10  to themselves.  Costello v. United States, 365 U.S. 265, 282
11  (1961).  Plaintiff states in her declaration that when she was at
12  Timber Cove in 1997 she complained about the access problems to
13  an assistant manager, who told plaintiff she would see what could
14  be done. (Pickern Decl. ¶ 4.)  The court cannot say that
15  plaintiff's failure to take legal action promptly after her visit
16  in 1997 was unreasonable, since plaintiff was entitled to rely on
17  the assistant manager's apparent willingness to see if the issue
18  could be resolved informally.  Moreover, the court fails to see
19  why defendants are prejudiced by having to defend the lawsuit now
20  as opposed to 1997.  Therefore, the court declines to apply the
21  doctrine of laches as a bar to plaintiff's action.

22  D.  Individually Named Defendants

23  In addition to Timber Cove, the complaint names Robert
24  and Lisa Maloff, and George and Elsie Karadanis as defendants.
25  These individuals contend that they are not liable under the ADA
26  because they do not have the power to make decisions about
27  disability access at Timber Cove.  (See Maloff Decl. ¶ 13:
28  "Timber Cove is responsible for making decisions and taking

12

1 || action regarding disabled access.  Neither I, my wife, George or
2 || Elsie Karadanis has any power or control on an individual basis
3 || to make disabled access matters.")

4 ||          Section 302 of the ADA provides that "[n]o individual
5 || shall be discriminated against on the basis of disability in the
6 || full and equal enjoyment of . . . any place of public
7 || accommodation by any person who owns, leases (or leases to), or
8 || operates a place of public accommodation."  42 U.S.C. § 12182(a).
9 || Plaintiff has presented ample evidence that the individually
10 || named defendants own and operate Timber Cove.  In his
11 || declaration, Maloff admits that he is part owner of Timber Cove,
12 || and is the managing partner responsible for the lodge's
13 || operations.  (Maloff Decl. ¶¶ 1,2.)  The grant deed to the
14 || property names Robert and Lisa Maloff as holding an undivided one
15 || half interest as husband and wife, with George and Lisa Karandis
16 || holding the other half.  (Steneberg Decl. ¶ 17, Ex. O.)  Maloff
17 || and Karandis confirmed their ownership interest in Timber Cove in
18 || their depositions, and Maloff testified that he and Karandis
19 || participate in the day to day operation of the lodge.  (Maloff
20 || Depo. at 8-9; Karandis Depo. at 5.)  Other evidence includes: (1)
21 || a state board of equalization sales and use tax permit issued in
22 || the name of Robert Maloff bda HKM Timber Cove Lodge; (2) a lease
23 || agreement between Robert Maloff and George Karandis dba Timber
24 || Cove Lodge and First Resorts Hotel and Restaurant Services of
25 || Lake Tahoe; and (3) a liability insurance policy issued to Robert
26 || Maloff and George Karandis dba Timber Cove Lodge.  (Steneberg
27 || Decl. ¶¶20-22, Ex. R-T.)  This evidence is sufficient to raise a
28 || material issue of fact not only as to whether the individually

1 named defendants owned and operated Timber Cove, but also as to
2 whether they were responsible for making decisions about disabled
3 access.

4        E.   Jurisdiction Over State Law Claims

5             Plaintiff asks the court to dismiss the state law
6 claims because they involve unresolved questions of state law
7 that should be remanded to state court.  This argument fails for
8 two reasons.  First, this court has federal question jurisdiction
9 to hear the state claims.  Second, the state law issues before
10 the court are neither extremely complex nor entirely unresolved.

11             1.   Federal Question Jurisdiction

12             Federal question jurisdiction exists where "one or more
13 of the state law claims necessarily turns on the construction of
14 a substantial, disputed federal question."  Rains v. Criterion
15 Systems, Inc., 80 F.3d 339, 343 (9th Cir. 1996).  Thus, "a case
16 might . . . 'arise under' the laws of the United States if a
17 well-pleaded complaint established that its right to relief under
18 state law requires resolution of a substantial question of
19 federal law in dispute between the parties."  Franchise Tax Board
20 v. Construction Laborers Vacation Trust, 463 U.S. 1, 13 (1983).

21             Here, two of plaintiff's three state law claims
22 depend on whether plaintiff can establish that defendants
23 violated the provisions of the ADA.  Plaintiff brings state
24 claims under the California Disabled Persons Act and the Unruh
25 Civil Rights Act, both of which prohibit discrimination against
26 persons with disabilities.  Cal. Civ. Code § 54 et seq; Cal. Civ.
27 Code § 51 et seq.  After the ADA was passed in 1990, both
28 statutes were amended to provide that a violation of the ADA

14

constitutes a violation of their provisions.  Cal. Civ. Code §§
51(f); 54.1(d)(amended in 1992 and 1994 respectively).  Thus, a
plaintiff whose rights are violated under the ADA may now seek
damages under the California statutes.  <u>Boemio v. Love's</u>
<u>Restaurant</u>, 954 F. Supp. 204, 208-09 (S.D. Cal. 1997); <u>Presta v.</u>
<u>Peninsula Corridor Joint Powers Bd.</u>, 16 F. Supp. 1134, 1135 (N.D.
Cal. 1998).  California courts interpret the amendments to these
acts "as acknowledgment by the Legislature of its intent that
[the state disability statutes] impose at least the same
requirements as are imposed by the Americans with Disabilities
Act (the ADA)."  <u>Hankins v. El Torito Restaurant, Inc.</u>, 63 Cal.
App. 4th 510 (1998).

         The incorporation of the ADA into state law does not
necessarily require a showing that the ADA was violated.  Under
the state statutes, a plaintiff can show either that the ADA was
violated, or that the facility in question does not comply with
the California Building Code requirements for disabled access,
which are commonly referred to as "Title 24".  <u>See</u> Cal. Civ. Code
§ 54 ("individuals with disabilities have the same right as the
general public to full and free use of . . . public places . . .
subject only to the conditions of limitations established by law,
or state <u>or</u> federal regulations. . . .") (emphasis added); Cal.
Health & Safety Code § 19955; Cal. Code Regs Title 24 § 1134B.1,
2.  Under the uncontroverted facts in this case, however,
plaintiff's state claims cannot succeed unless she can prove an
ADA violation.

         Title 24 is more lenient than the ADA.  It requires
compliance with the disabled access standards only if a public

accommodation is newly constructed or structurally altered.
Buildings existing at the time of Title 24's enactment in 1982
are exempt from compliance unless "alterations, structural
repairs or additions are made to such buildings or facilities. .
. ."  Cal. Code Regs Title 24 § 1134B.1, 2.  The ADA has no such
triggering requirement.  It imposes an affirmative duty on all
existing facilities to remove architectural barriers if their
removal is readily achievable.  42 U.S.C § 12182(b)(2)(A)(iv).

          Timber Cove predates both the enactment of Title 24 and
the ADA, and is therefore an "existing facility" for purposes of
both statutes.  Because it is uncontroverted that no alterations,
structural repairs or additions have been made to Timber Cove
since it was constructed in 1973, it is exempt from the
requirements of Title 24.  (See Def's Mot. Summ. J. at 18-20;
Maloff Decl. ¶ 2.)  Consequently, the only legal theory open to
plaintiff on her state claims is that architectural barriers at
Timber Cove violate the ADA.  Because the resolution of
plaintiff's state law claims "necessarily turns on the
construction of a substantial, disputed federal question," this
court has federal question jurisdiction over the state law
claims.  Rains 80 F.3d at 343 (9th Cir. 1996).

                    2.  Complicated State Law Issues

          Even if federal question jurisdiction did not exist,
the issues of state law that remain to be decided are not so
complicated that this court would decline to exercise pendent
jurisdiction over the state claims.  See Gray v. First Winthrop
Corp., 776 F. Supp. 504, 509 (N.D. Cal. 1991)(where state law
claims involve undecided issues of state law, the claims are

1 "better left to the state court to decide").

2 Defendants proffer five examples of complicated state
3 law issues that this court would have to resolve if it were to
4 retain jurisdiction over the state law claims. (Def's Mot. Summ
5 J. at 10-11.) The first four relate to the interpretation of
6 Title 24, which as discussed above is inapplicable to plaintiff's
7 case. The fifth raises the issue of whether plaintiff can
8 recover damages for each day she was deterred from visiting the
9 facility under California law. (Id.) Although the question
10 remains unsettled as a matter of state law, federal courts have
11 not hesitated to rule on this issue. See Arnold v. United
12 Artists, 866 F. Supp. 433, 439 (1994); Botosan v. Fitzhugh, 13 F.
13 Supp. 2d. 1047 (S.D. Cal. 1998). In fact, this court recently
14 found that daily damages could be recovered under the state
15 statutes in question. Loskot v. Lulu's Restaurant, No. Civ. S-
16 00-1497 WBS PAN (E.D. Cal. 2000). This issue is not so complex
17 that this court would decline to exercise its pendent
18 jurisdiction over the state claims.

19 E. Unruh Act and California Disabled Persons Act

20 Defendants argue that they are entitled to summary
21 judgment because plaintiff cannot succeed on her state law claims
22 as a matter of law. If the amendments to the Unruh Act and the
23 California Disabled Person's Act that incorporated the ADA into
24 state law had never been passed, defendants would have been
25 correct. Until the state statutes were amended in 1992 and 1994
26 respectively, a plaintiff had to show that the facility was in
27 violation of Title 24, and that the discrimination she
28 experienced was intentional. Marsh v. Edwards Theaters, Inc., 64

17

1 Cal. App. 3d 881 (1976)(holding that a defendant can not be
2 liable under Civil Code § 54 et seq. absent a violation of an
3 applicable building code regulation); Harris v. Capital Growth
4 Investors, 52 Cal. 3d 1142, 1175 (1991)(requiring a plaintiff to
5 plead a prove intentional discrimination to recover under the
6 Unruh Act.)  Here, it is undisputed that Timber Cove is exempt
7 from Title 24, and that defendants did not intentionally
8 discriminate against plaintiff.  (Pl's Statement Disputed Facts
9 ¶¶ 8-12.)

10          The ADA, however, does not contain an exemption for
11 existing facilities.  In addition, a plaintiff does not have to
12 prove intentional discrimination to establish that her rights
13 under the ADA were violated.  See Helen L. v. DiDario, 46 F.3d
14 325, 335 (3rd Cir. 1995); Presta,16 F. Supp. 2d at 1136 ("[The
15 ADA] guards against both intentional discrimination and simple
16 exclusion from services resulting not from intentional
17 discriminatory acts, but rather from inaction, thoughtlessness,
18 or equal treatment when particular accommodations are
19 necessary"); Parr, 96 F. Supp. 2d at 1084.  The California
20 legislature, by incorporating the full expanse of the ADA into
21 the Unruh Act and the Disabled Persons Act, also incorporated
22 these standards.  See Hankins, 63 Cal. App. 4th 510 ("authority
23 regarding the scope of the ADA is probative of the intended scope
24 of [the state statutes].")  Intentional discrimination is no
25 longer a prerequisite to liability under these statutes.  See
26 Presta, 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998)(holding that
27 in light of the amendment incorporating the ADA into the Unruh
28 Act a plaintiff need not prove intentional discrimination); Parr,

1  96 F. Supp. 2d at 1084(same).[4]  Therefore, the fact that
2  plaintiff cannot prove intentional discrimination is of no
3  consequence.  Because plaintiff survives summary judgment on her
4  ADA claim for the reasons set forth above, she also survives
5  summary judgment with respect to her claims under the Unruh Act
6  and the California Disabled Persons Act.

7       F.  Damages

8       Defendants argue that even if plaintiff can maintain a
9  claim under these statutes, she cannot recover damages.
10 Defendants contend that because a plaintiff can only recover
11 injunctive relief on a Title III ADA claim against a private
12 party, a plaintiff is not permitted to recover damages under the
13 California statutes if the basis for her claim thereunder is a
14 violation of the ADA.[5]

15      The language of the Unruh Act and the California
16 Disabled Persons Act, however, support the opposite conclusion.
17 Section 52 of the California Code states, "[w]hoever . . . makes
18 any discrimination or distinction contrary to Section 51 or 51.1,
19 is liable for each and every offense for the actual damages and
20 any amount that may be determined by [the factfinder]" up to a
21 specified amount.  Similarly, Section 54.3 states, "Any person .

22

23      [4]    The court is unaware of any California case decided
   after the amendments to these statutes that has ruled on the
24 issue of whether a plaintiff must prove intentional
   discrimination or a violation of Title 24 to prevail on a state
25 claim for disability discrimination.

26      [5]    Defendants appear to be making something akin to a
   preemption argument - i.e., because Congress provided only for
27 injunctive relief, it preempted state law remedies for ADA
   violations.  However, defendants do not phrase their argument in
28 terms of preemption, and cite no case law to support a preemption
   theory.

19

. . who denies or interfere with admittance to or enjoyment of
the public facilities as specified in Section 54 and 54.1 or
otherwise interferes with the rights of an individual with a
disability under Section 54, 54.1 and 54.2 is liable for each
offense for the actual damages and any amount as may be
determined by [the factfinder]" up to a specified amount.

There is nothing in the language of these statutes that
draws a distinction between a plaintiff who prevails through
showing a violation of Title 24 and a plaintiff who prevails by
proving the barrier access requirements of the ADA were violated.
The right to recover damages is the same regardless of the how
the California statute was violated.   Therefore, plaintiff may
recover damages under these statutes for ADA violations.   Boemio,
954 F. Supp. at 208-09; Presta, 954 F. Supp. at 1135.

G.   Health and Safety Code § 19955

Plaintiff's third cause of action alleges violations of
California Health and Safety Code § 19955.   Section 19955
requires all public accommodations or facilities constructed with
private funds to comply with California Government Code §§ 4450-
4460.   Cal. Health & Safety Code § 19955 (West 2001); see
generally City and County of San Francisco v. Grant Co., 181 Cal.
App.3d 1085 (1986); People Ex Rel. Deukmejian v. CHE, Inc., 150
Cal. App.3d 123 (1983); Marsh v. Edwards Theater Circuits, Inc.,
64 Cal. App.3d 881 (1976).   Government Code Section 4450 in turn
refers to Title 24 of the California Code of Regulations as the
source of the relevant building standards for places of public
accommodation.   Cal. Gov't Code §§ 4450, 4451(d)(West
2001)(referencing the California Building Standards Code and

1  regulations such as Title 24 developed by the State Architect and
2  adopted by the California Building Standards Commission.)
3  Because defendants have made no alterations, structural repairs
4  or additions to Timber Cove since its construction in 1973, they
5  are exempt from adhering to the standards proscribed in Title 24,
6  and consequently from liability under Health and Safety Code
7  Section 19955.[6]

8          IT IS THEREFORE ORDERED that:

9          (1) Defendants' motion for summary judgment be, and the
10  same hereby is, GRANTED with respect to plaintiff's claim under
11  California Health and Safety Code § 19955; and

12          (2) in all other respects, defendants' motion for
13  summary judgment be, and the same hereby is, DENIED.

14  DATED: January 17, 2002

15

16          WILLIAM B. SHUBB
                UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26     [6]  Plaintiff does not address defendants' argument that her
     claim under section 19955 should be dismissed.  She appears to
27  concede the point by arguing, in connection with the
     jurisdictional question, that Title 24 does not apply to Timber
28  Cove.

                                21

United States District Court
for the
Eastern District of California
January 18, 2002

* * CERTIFICATE OF SERVICE * *

2:00-cv-01637

Pickern

v.

Best Western Timber

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  January 18, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Thomas Edward Frankovich                 SH/WBS
Law Offices of Thomas E Frankovich
2806 Van Ness Avenue
San Francisco, CA  94109

Catherine Mary Corfee
Cook Brown and Prager
555 Capitol Mall
Suite 425
Sacramento, CA  95814

Mark R. Mittelman
Law Offices of Mark Mittelman
2700 Ignacio Valley Road
Suite 130
Walnut Creek, CA  94598

Jack L. Wagner, Clerk

BY: _____
Deputy Clerk